```
IN THE UNITED STATES DISTRICT COURT
 FOR THE MIDDLE DISTRICT OF GEORGIA
           COLUMBUS DIVISION
```

UNITED STATES OF AMERICA,     *

vs.                           *
                                    CASE NO. 4:22-CR-7 (CDL)
RAYMOND RICHMOND,             *

    Defendant.              *

O R D E R

    It has been my experience that oral argument can sometimes improve the quality of judicial decision making. It obviously provides counsel with the opportunity to educate and inform the Court. But it also allows the Court to test the parties' arguments and confront the Court's own preconceived notions. Although all judges have different approaches, some, including myself, find it helpful to play the devil's advocate to challenge counsel's position and to crystalize the Court's thinking. But when the Court delivers a ruling *ore tenus* from the bench immediately following a robust and expansive oral argument, the Court runs the risk of its commentary during oral argument being misunderstood and misconstrued when its ruling is later interpreted. Accordingly, it is often wise to reduce such oral orders to writing to avoid misunderstanding and confusion. This order does that by explaining the Court's rationale in denying Defendant's objection

to the calculation of his base offense level at his sentencing hearing (ECF No. 30).[1]

FACTUAL BACKGROUND

Defendant pled guilty to possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Probation Officer calculated his base offense level under the Federal Sentencing Guidelines to be 26. She based this determination on the application of USSG § 2K2.1. That Guideline establishes this base offense level if the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine *and the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.* Defendant does not dispute that he illegally possessed an extended magazine with twenty-six rounds of ammunition, nor does he dispute that he was previously convicted under Georgia law of separate felonies for the sale of cocaine and obstruction of a law enforcement officer. Defendant did not object to his obstruction of a law enforcement officer conviction being treated as a "crime of violence" for purposes of the calculation of the base offense level, but he did object to his prior conviction for the sale of

---

[1] Although it likely has no legal significance, the Court notes that this written order is being entered prior to the entry of final judgment.

cocaine being treated as a "controlled substances" offense for that purpose.

The Probation Officer made a four-level increase to the base offense level of 26 pursuant to USSG § 2K2.1(b)(6)(B) because Defendant used or possessed the firearm that he unlawfully possessed in connection with another felony offense. Specifically, it was undisputed that he possessed two firearms while possessing 169 grams of marijuana and approximately 32 grams of cocaine packaged in nine baggies. With this adjustment, Defendant's adjusted offense level was 30, which was reduced for acceptance of responsibility to a total offense level of 27. With a criminal history category of VI, his Guidelines imprisonment range was 130 to 162 months. But the statutory maximum for his offense of conviction was 120 months, and therefore, that became his Guidelines range. The Court accepted the calculations in the presentence report, denied Defendant's objection, and sentenced Defendant to 120 months imprisonment.

## DEFENDANT'S OBJECTION

As noted previously, Defendant objected to the calculation of his base offense level in the presentence report. He argues that his 2008 Georgia felony conviction for the selling of cocaine and selling a controlled substance within 1000 feet of a school was not a "controlled substance offense" under the Guidelines for purposes of calculating his base offense level. Thus, he maintains

3

that his total offense level should be 23 resulting in a Guidelines range of 92 to 115 months.

Defendant does not contest that in 2008 he was convicted in the Muscogee County, Georgia Superior Court of three counts of the sale of cocaine and three counts of selling a controlled substance within 1000 feet of a school.  No evidence exists in the sentencing record as to "what type of cocaine" Defendant was selling—only that he was a selling "cocaine," which was a controlled substance under Georgia law at the time of conviction.  Encouraged by the United States Supreme Court precedent adopting a so-called "categorical" approach for deciding whether predicate offenses qualify for sentencing enhancements under the Guidelines, Defendant's counsel maintains that the definition of cocaine under Georgia law at the time that Defendant committed the state controlled substance offense was broader than the definition of controlled substance under the federal controlled substances statute at the time of Defendant's sentencing in this federal case. *See Mathis v. United States*, 579 U.S. 500, 504-06 (2016) (describing the categorical approach).  And because he therefore could have theoretically been convicted of the Georgia offense for distributing a derivative of cocaine that would not be a controlled substance violation today under federal law, counsel argues that his prior cocaine conviction cannot be considered in determining Defendant's base offense level.

4

In support of his argument that the Georgia controlled substances statute defines cocaine broader than the federal controlled substances statute, Defendant's counsel maintains that under the Georgia controlled substances statute, ioflupane, which is a derivative of ecgonine which is a derivative of cocaine, was considered cocaine for purposes of the Georgia statute and thus was a controlled substance at the time of Defendant's prior conviction.  In 2015, seven years after Defendant's state-controlled substance conviction, the United States Attorney General exercised his discretion under 21 U.S.C. § 802(a)(2) and removed ioflupane from the federal drug schedules because it can help diagnose Parkinson's disease.  Since that date, ioflupane has been excepted from the federal drug schedule even though it may be considered a derivative of cocaine.  For purposes of Defendant's objection in this case, the Court accepted the foregoing facts as true.

Defendant's counsel argues that because the "cocaine" that Defendant sold within 1000 feet of a school in 2008 could have possibly been only the cocaine derivative ioflupane and because the sale of only ioflupane was not a controlled substance under the federal controlled substances statute at the time of Defendant's sentencing hearing in this case fifteen years later, his prior state controlled substance conviction cannot be considered a predicate controlled substance offense under the

5

Guidelines. It does not matter that no evidence exists that Defendant was peddling ioflupane instead of garden variety cocaine. Nor, according to Defendant, does it matter that at the time he was convicted of selling cocaine near a school in 2008 ioflupane was a controlled substance under the federal controlled substances act.

## DISCUSSION

The Court expressed its frustration with the pedantic nature of the categorical approach during the sentencing hearing in this case. Nevertheless, this Court understands its place in the judiciary hierarchy and its duty to follow binding precedent from the Supreme Court and the Court of Appeals even if the undersigned personally believes that precedent is misguided and produces perplexing results. Applying that binding precedent in this case, however, does not lead to the conclusion that Defendant's objection must be sustained.

The Court's analysis begins with the text of the Guidelines and the related application notes. For purposes of the Guidelines, "controlled substance offense" is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export,

6

distribute, or dispense." U.S. Sent'g Guidelines Manual § 4B1.2(b) (U.S. Sent'g Comm'n 2021). Defendant was convicted of three counts of the sale of cocaine and three counts of selling a controlled substance within 1000 feet of a school. This conviction clearly arose from "an offense under . . . state law, punishable by imprisonment for a term exceeding one year, that prohibits the . . . distribution of a controlled substance." *Id.* Under a plain reading of the Guidelines, Defendant's prior conviction qualifies as a "controlled substance offense." Because Defendant's 2008 cocaine conviction meets § 4B1.2(b)'s definition of "controlled substance," there is no need to resort to the "categorical approach" to determine the meaning of "controlled substance offense" under the Guidelines. The Guidelines unambiguously define "controlled substance offenses" to include state law offenses for the distribution of controlled substances for which the penalty is a term of imprisonment exceeding one year. Defendant was convicted of three counts of selling cocaine and three counts of selling a controlled substance within 1000 feet of a school in violation of Georgia law related to controlled substances. No one disputes that the controlled substance Defendant sold was cocaine, a controlled substance under Georgia law. For most mere mortals, that would end the inquiry. Defendant was convicted of selling cocaine, which was a controlled substance under Georgia law, for which the penalty was imprisonment of at

7

least one year. Thus, he has a prior controlled substance offense for purposes of the federal Guidelines. To hold otherwise by creating some legal fiction makes a mockery of the law. Judges can sometimes make the simple complicated. Although Defendant's conviction clearly falls within the type of conduct that the Guidelines intended to capture when they provided a sentencing enhancement for prior state law "controlled substance offenses," Defendant's counsel seizes upon the "categorical approach" precedent in an effort to have the Court disregard Defendant's previous conviction for selling cocaine near a school. Accepting this argument to disregard the obvious leads to the inexplicable predicament that the Guidelines are designed to eliminate—disparate treatment of similarly situated offenders. Without the increased base offense level, Defendant's Guideline range may be the same as someone who did not engage in the dangerous criminal conduct captured by these predicate offenses.[2]

The Court is skeptical as to whether the categorical approach is even necessary for deciding Defendant's objection. As indicated previously, it is clear to this Court that Defendant's prior

---

[2] The crux of Defendant's argument is that, at the time of the sentencing hearing in this case, the federal controlled substances statute differed from the Georgia controlled substances statute in 2008 when Defendant was convicted of the predicate offense. The Court notes, however, that the change in the federal law did not occur until 2015, seven years after Defendant's Georgia conviction. So, at the time of the predicate offense, the Georgia law and the federal law were consistent as to the definition of cocaine as a controlled substance. In other words, they both covered ioflupane.

8

conviction falls within the unambiguous definition of controlled substance under the Guidelines. Nevertheless, the Court understands that binding precedent exists in this Circuit establishing generally that the categorical approach may be used to determine whether a state conviction qualifies as a predicate controlled substance offense under the Guidelines. *See Hollis v. United States,* 958 F.3d 1120, 1123 (11th Cir. 2020) (citing *Shular v. United States,* 140 S. Ct. 779, 783 (2020)). Under this approach, if the prior state conviction has the same elements as the Guidelines definition, then it categorically qualifies as a predicate offense. *Id.* This qualification can be found even if the language of the state statute does not match the Guidelines definition exactly. *Id.* The Court finds that Defendant's prior Georgia controlled substance conviction categorically qualifies as a predicate offense under the Guidelines. As described previously, the elements are the same except that there is the remote possibility that someone could be prosecuted under the Georgia statute for distributing ioflupane whereas at the time of Defendant's current sentencing hearing for his federal crime someone could not be prosecuted under the federal controlled substances statute for the distribution of only ioflupane. The Court finds this slender reed inadequate to support Defendant's objection. The Court certainly acknowledges that under the categorical approach it must "presume that the prior conviction

9

rested upon the least of the acts criminalized by the statute." *United States v. Stancil,* 4 F.4th 1193, 1197 (11th Cir. 2021) (internal quotation marks and citation omitted). That presumption, however, "has limits: the inquiry into the minimum conduct criminalized by the state statute must remain within the bounds of plausibility." *Id.* (alteration adopted) (internal quotation marks and citation omitted). The Court finds that while someone could *possibly* have been prosecuted under the Georgia statute in 2008 for distributing only ioflupane, the extension of the categorical approach to disregard Defendant's convictions under the circumstances presented here would be the product of an inquiry that extends beyond the bounds of plausibility. Defendant was convicted of selling cocaine near a school; nothing indicates that school children had some preference for an obscure derivative known as ioflupane. We should not stick our heads in the sand. To the extent the categorical approach applies here, it should not change the only conclusion supported by a reasonable interpretation of the law and common sense--Defendant's prior Georgia drug offense is a controlled substance offense under the Guidelines. To hold otherwise takes us down the path to Alice's Wonderland.

CONCLUSION

For the reasons stated at Defendant's sentencing hearing as further explained in this Order, Defendant's objection to the base offense level (ECF No. 30) is overruled.

IT IS SO ORDERED, this 19th day of July, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA